IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JAMES OWEN HACKWORTH                                                               PLAINTIFF

V.                              Case No. 3:23-CV-00204-BBM

MARTIN O'MALLEY, Commissioner,
Social Security Administration[1]                                                  DEFENDANT

**ORDER**[2]

I.     INTRODUCTION

On November 17, 2020, Plaintiff James Owen Hackworth ("Hackworth") filed a Title XVI application with the Social Security Administration ("SSA") for supplemental security income.[3] (Tr. at 11). In the application, Hackworth alleged that he became disabled on January 1, 2019. *Id*. The application was denied at the initial administrative level and upon reconsideration. *Id*.

After conducting a hearing, an Administrative Law Judge ("ALJ") issued a written decision finding that Hackworth was not disabled. (Tr. at 11–20). The Appeals Council denied Hackworth's request for review of the ALJ's decision on October 11, 2023. (Tr. at 1–6). The ALJ's decision now stands as the final decision of the Commissioner, and Hackworth has requested judicial review.

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration ("the Commissioner"). Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner O'Malley is automatically substituted as the Defendant.

[2] The parties consented in writing to the jurisdiction of a United States Magistrate Judge. (Doc. 5).

[3] Hackworth was 19 years old on the application date.

For the reasons stated below, the Court affirms the decision of the Commissioner.

## II.  THE COMMISSIONER'S DECISION

The ALJ found that Hackworth had not engaged in substantial gainful activity since the application date of November 17, 2020.[4] (Tr. at 13, 19). At Step Two, the ALJ determined that Hackworth has the following severe impairments: autism, separation anxiety disorder, borderline intellectual functioning, and learning disorder. (Tr. at 13).

At Step Three, the ALJ determined that Hackworth's impairments did not meet or equal a Listing.[5] (Tr. at 13–16). Before proceeding to Step Four, the ALJ determined that Hackworth had the residual functional capacity ("RFC") to perform work at all exertional levels, but with additional mental restrictions: (1) he is capable of understanding, remembering, and carrying out simple but not complex instructions; (2) he can have no interaction with the general public; and (3) he can have no more than occasional changes to the workplace setting. (Tr. at 16).

At Step Four, the ALJ determined that Hackworth had no past relevant work. (Tr. at 19–20). At Step Five, the ALJ relied upon testimony from a Vocational Expert to determine that, based on Hackworth's age, education, work experience, and RFC, he was

---

[4] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g). For Title XVI claims, the relevant time-period begins on the application date. (Tr. at 11).

[5] 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.

capable of performing work in the national economy. *Id.* Therefore, the ALJ concluded that Hackworth was not disabled. *Id.*

### III.  DISCUSSION

#### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (internal quotations and citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

## B.     Brief Summary of Hackworth's Psychiatric Evaluations and Treatment

In February and March of 2018, Hackworth saw Psychological Examiner David Shade ("Shade") on a referral from his primary care physician, Dr. Dennis Blake. (Tr. at 455). Hackworth was referred to psychiatry to consider an autism spectrum disorder; Hackworth was already being treated for obsessive-compulsive disorder and separation anxiety disorder. *Id*. Shade's notes indicate that Hackworth had been prescribed Lexapro, to be taken daily. *Id.* After completion of testing, Shade diagnosed Hackworth with separation anxiety disorder, by history; autism spectrum disorder requiring substantial support; and specific learning disability in reading, math, and written expression.[6] (Tr. at 464).

On December 18, 2020, Hackworth visited Nurse Chris Stone for pharmacologic management. (Tr. at 343). As of that appointment date, Hackworth was prescribed fluvoxamine (daily for mood), trazadone (for sleep), and propranolol (as needed for anxiety). *Id.* At the December 18, 2020 appointment, Hackworth agreed to continue the above-listed medications, and Nurse Stone increased his dosage of fluvoxamine. (Tr. at 344, 346). On February 9, 2021, Stone and Hackworth's counselor, Keri Henson, noted that "[p]rogress has been made." (Tr. at 354–355).

On April 8, 2021, Hackworth saw psychiatric consultative examiner, Anita Wells, Ph.D ("Dr. Wells"), who conducted a mental diagnostic exam. (Tr. at 324–334). Dr. Wells thoroughly interviewed Hackworth for social, educational, and treatment history and found

---

[6] Hackworth was also diagnosed with a learning disability in school and received accommodations based thereupon, which helped him. (Tr. at 396–474).

4

few deficits in mental function. *Id.* She noted he had a happy mood, pleasant affect, adequate speech, logical thought process, and no hallucinations or suicidal ideations. (Tr. at 327). Intellectual testing conducted by Dr. Wells did not place Hackworth in the intellectual disability range. (Tr. at 329). Dr. Wells discussed Hackworth's response to treatment and ability to complete daily activities. In conclusion, Dr. Wells found that Hackworth: (1) could cope with mental/cognitive demands of basic work-like tasks; and (2) had no problems with communication or maintaining persistence and attention. (Tr. at 332).[7]

### C. Hackworth's Arguments on Appeal

Hackworth contends that the evidence supporting the ALJ's decision to deny his application for benefits is less than substantial. Specifically, Hackworth argues that: (1) the ALJ failed to consider adequately statements from Hackworth's stepmother, (Doc. 11 at 26); (2) the ALJ did not provide the consultative examiner, Dr. Wells, with sufficient background information, *id.* at 26–28; and (3) the ALJ made improper generalizations about Hackworth's mental-status exams, *id.* at 29–30. The Court will address each argument, in turn.

#### 1. Jennifer Hackworth's Statements

Hackworth alleges that the ALJ should have specifically mentioned and considered Jennifer Hackworth's statements and assessed their credibility. First, the Court notes that

---

[7] Based on the balance of the evidence, the ALJ found Dr. Wells' opinion to be persuasive. (Tr. at 18).

Jennifer Hackworth's statements and opinions that her stepson was disabled did not comport with the medical evidence, [8] showing generally normal mental status examinations, Hackworth's positive response to both medication and coping skills, and Hackworth's ability to perform a variety of daily activities. Second, new regulations remove credibility assessments about opinion evidence. *See* Social Security Ruling (SSR) 16-3p, 2017 WL 5180304. Third, an ALJ need not expressly discuss nonmedical source statements.[9] Finally, in this case, the ALJ *did* indicate that he considered Ms. Hackworth's statements in determining Hackworth's RFC. (Tr. at 19). The Court finds no error.

## 2. Dr. Wells' Opinion

Hackworth next asserts that the ALJ should have provided more background information to Dr. Wells before she performed the consultative examination. The Court disagrees. The ALJ provided Dr. Wells with a treatment plan from Hackworth's long-time mental health provider, as well as Hackworth's disability function report, both of which provided sufficient detail about Hackworth's diagnoses, treatment, and symptoms. (Tr. at 324). SSA regulations state that an ALJ will give an examiner "any necessary background information about your condition." *See* 20 C.F.R. § 416.917. They do not state that an ALJ needs to provide ALL medical evidence. Moreover, Dr. Wells performed a thorough examination of Hackworth. She provided a 10-page narrative report, including

---

[8] Ms. Hackworth's statements were inconsistent with the record as a whole; moreover, the SSA considers that a family members' opinion may be motivated by a desire to see the claimant receive benefits, which renders it less persuasive, in general. *Tate v. Apfel*, 167 F.3d 1191, 1198 n.8 (8th Cir. 1999).

[9] An ALJ need not explicitly discuss why he discredits a lay person's observations or testimony. *See Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520c(d), 416.920c(d); SSR 16-3p.

intelligence-testing results. (Tr. at 324–334). Her opinion was complete and well-supported.

### 3.     ALJ's Assessment of Hackworth's Condition

Hackworth contends that the ALJ relied too heavily upon evidence that showed Hackworth's mental status examinations were grossly normal, arguing that the ALJ's assessment of the record was "selective and superficial." (Doc. 11 at 30). Indeed, Hackworth's mental health providers consistently found him to be cooperative and friendly, to have appropriate mood and affect, to have normal speech and fair judgment, to have good memory, and a good fund of knowledge. (Tr. at 17–19, 252–270, 279–299, 313–321, 345–363, 374–388). The ALJ properly considered their reports, along with other evidentiary factors, to find that Hackworth was not disabled.[10] The Court finds this argument unpersuasive.

## IV.    CONCLUSION

The Court commends the parties for thoroughly briefing the issues in this case. While Hackworth makes some compelling arguments, this Court finds that substantial evidence supports the Commissioner's decision to deny benefits. The ALJ properly considered the opinion evidence, provided sufficient background information to the consultative examiner, Dr. Wells, and fairly considered Hackworth's mental status exams. The finding that Hackworth was not disabled within the meaning of the Social Security

---

[10] Moreover, the ALJ limited Hackworth to simple work with additional mental restrictions in the RFC, indicating he gave credit to Hackworth's limitations, as well as to the opinion of Dr. Marilyn Jordan, the SSA non-examining expert, who found that Hackworth had mental RFC limitations. (Tr. at 16–18, 56–57).

Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

DATED this 11th day of September, 2024.

_____
UNITED STATES MAGISTRATE JUDGE